```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
NEC FINANCIAL SERVICES, LLC,

                Plaintiff,              MEMORANDUM & ORDER
                                        24-CV-03978 (JS)(AYS)
     -against-

THE HEALTH AND WELLNESS CENTERR,
LLC, and SECIL SCHODROSKI a/k/a
SECIL A. SCHODROSKI,
individually,

                Defendants.
---------------------------------X
APPEARANCES

For Plaintiff:      Michael F.J. Romano, Esq.
                    Romano, Garubo & Argentieri
                    52 Newton Avenue
                    P.O. Box 456
                    Woodbury, New Jersey 08096

For Defendants:     Ronald A. Norwood, Esq.
                    Lewis Rice LLC
                    600 Washington Avenue, Ste. 2500
                    St. Louis, Missouri 63101
```

SEYBERT, District Judge:

Presently before the Court is the Defendants The Health and Wellness Centerr, LLC, d/b/a The Health & Wellness Center (hereafter, "THWC"), and Secil Schodroski (hereafter, "Dr. Schodroski") (collectively, "Defendants"), Motion to Dismiss for lack of personal jurisdiction (hereafter "Dismissal Motion") (ECF No. 18). Defendants, who are both citizens and residents of Missouri, assert this Court does not have personal jurisdiction over them because: (1) Defendants do not have sufficient contacts

with New York State to satisfy the requirements of the Due Process Clause of the Constitution and New York State's long-arm statute; and (2) the Equipment Finance Agreement ("Finance Agreement") signed by Defendants, which contains a forum selection clause whereby Defendants agreed to "submit to the jurisdiction of [New York]", is void ab initio and therefore cannot be the basis for personal jurisdiction. (See Support Memo, ECF No. 19, in toto; see also Finance Agreement, ECF No. 19-3, Exhibit 1-B attached to Schodroski Decl.)  In opposition, Plaintiff argues the forum selection clause in the Finance Agreement is "presumptively enforceable" and Plaintiff's allegations do not rise to the level of fraud required to invalidate the forum selection clause. (See Opp'n, ECF No. 20, in toto.)  For the reasons that follow, Defendants' Dismissal Motion is DENIED.

BACKGROUND[1]

I. Factual Background

    A. The Parties

Defendant Dr. Schodroski is a Missouri resident and nurse practitioner who holds a doctoral degree in nursing practice. (Support Memo at 6.)  Dr. Schodroski is the founder and sole member of Defendant limited liability company, THWC. (Id.)  THWC

---

[1] The facts discussed herein are derived from the Complaint and the parties' submissions relative to the instant Dismissal Motion. (See Compl., ECF No. 1; Support Memo, ECF No. 19; Opp'n, ECF No. 20; Reply, ECF No. 21.)

2

"provides a number of wellness and cosmetic services to the patients in the St. Louis [, Missouri] community," including weight loss treatments, lipotropic injections, botox, and dermal fillers. (Id.) THWC's sole office is located in St. Louis, Missouri. (Id.)

Plaintiff NEC Financial Services, Inc. (hereafter, "NEC Financial") is the assignee of a Finance Agreement and Guaranty Agreement executed among MMP Capital, LLC (hereafter, "MMP Capital") and Defendants. (Opp'n at 5.) NEC Financial is a Delaware limited liability company, with its principal place of business in Saddle Brook, New Jersey. (Compl. ¶ 4.)

B. The Finance and Guaranty Agreements

On or about March 22, 2023, a salesman named David Kreuger went into THWC's office attempting to sell THWC medical equipment by the company Alma Lasers, Inc. (hereafter "Alma"). (Support Memo, at 6.) The machine Mr. Kreuger sought to sell to THWC was a liposuction machine called the "BeautiFill" (hereafter "BeautiFill" or the "Machine"). (Id.) Over the next week, Mr. Kreuger, along with his colleague, Alex Selter, performed a "hard sell" of the machine to THWC and THWC's owner, Dr. Schodroski. (Id.)

According to Defendants, they were unfamiliar with "performing and marketing liposuction services" and relied upon the representations made by Mr. Kreuger and Mr. Selter concerning the affordability, effectiveness, and reliability of the Machine.

3

(Id.) Defendants claim they were promised they would receive marketing assistance by Mr. Kreuger and others after purchasing the Machine, including assistance with hosting a "launch party" which would help secure customers. (Id. at 6-7.)

Eventually, Defendants expressed interest in purchasing the BeautiFill, which was priced at $80,000. (Id. at 7.) When Dr. Schodroski indicated she did not want to purchase the Machine using cash, Mr. Kreuger informed Dr. Schodroski that he had a contact at MMP Capital, Phil Zanardi, who was "ready to go" and had "already set up" a financing application for the BeautiFill. (Id.) Dr. Schodroski proceeded with a financing application, and asserts that during such process, Mr. Zanardi said "[he and Mr. Kreuger] would 'get [THWC] additional patients' so that Dr. Schodroski could make more money." (Id.) Defendants aver Mr. Zanardi made additional representations that the Machine would "pay for itself" and that the practice would "be so busy, [the BeautiFill] would be paid off by December [of 2023]." Id. Dr. Schodroski maintains that Mr. Zanardi's recommendation to purchase the BeautiFill machine was "important" to her because she felt "a bank would not want to lend money to purchase expensive medical equipment and marketing services unless it was confident" such equipment and services would bring in sufficient revenue to pay off the loan. (Id. at 8.)

4

On March 30, 2023, on behalf of THWC, Dr. Schodroski, signed a Purchase Agreement with Alma for, inter alia, the BeautiFill, a warranty, and a marketing allowance. (Id.; see also Purchase Agreement, ECF No. 19-2, Exhibit 1-A attached to Schodroski Decl.)  The following day, on March 31, 2023, Dr. Schodroski signed a Finance Agreement with MMP Capital on behalf of THWC and in an individual capacity as a guarantor.  (Dismissal Support Memo at 8; see also Finance Agreement.)  The Finance Agreement contains, inter alia, the following choice of law and forum selection clause:

> This [Finance Agreement] shall be governed and construed under the laws of the State of New York (NY), without reference to its principle of conflicts of laws and is deemed to have been performed in Nassau County, NY. You submit to the jurisdiction of NY and agree that the state and federal courts sitting in Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce this [Finance Agreement] or any action or proceeding arising under this [Finance Agreement].  You acknowledge jurisdiction may change at the sole discretion of MMP Capital, LLC's successors and/or assigns.

(Finance Agreement at 1.)

II.  Procedural Background

On June 3, 2024, Plaintiff, as assignee of MMP Capital, commenced the instant action against the Defendants alleging, inter alia: (1) THWC is in default of the Finance Agreement due to its non-payment of amounts due; and (2) Dr. Schodroski is in

5

default of her agreement, contained within the broader Finance Agreement, to personally and irrevocably guarantee prompt payment of debts owed by THWC. (See generally, Complaint, ECF No. 1; see also Finance Agreement.) On November 21, 2024, Defendants filed the instant Dismissal Motion, arguing: (a) this Court does not have personal jurisdiction over them based upon the Finance Agreement because such agreement was "permeated with fraud" and thus "void ab initio"; and (b) as non-residents of New York with no substantial connection to the State, general and specific personal jurisdiction cannot be obtained. (See Dismissal Support Memo at 13-15.) In Opposition, Plaintiffs argue: (i) Defendants' allegations of fraud are not directed at Plaintiff and, in any event, such allegations are mere "puffery" and do not rise to the level of fraud; and (ii) even if Defendants' allegations of fraud were viable, such alleged fraud is insufficient to invalidate the forum selection clause in the Finance Agreement which gives rise to personal jurisdiction in this case. (See Opp'n at 5-6.)

DISCUSSION

I. Legal Standard

A. Motion to Dismiss

A claim is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In determining whether to grant a Rule 12(b)(6) motion, courts must "accept as true all factual allegations contained in the Complaint and draw all inferences in plaintiff's favor." Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006). "A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, Plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

B. Personal Jurisdiction

The law of personal jurisdiction is well-settled. As a general matter:

7

> A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. . . . Personal jurisdiction over a nonresident will not violate due process principles if two requirements are met. First, the nonresident must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts with that forum state such that the defendant could reasonably anticipate being haled into court there." . . . Second, the exercise of personal jurisdiction over the non-resident must not offend traditional notions of fair play and substantial justice. The minimum contacts element is further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. On the other hand, general jurisdiction attaches when the defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic."

In re Sterling Foster & Co., Inc. Sec. Litig., 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (further citations omitted)).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing the court has jurisdiction over the defendant[s]." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).

8

C. <u>Personal Jurisdiction Via Forum Selection Clause</u>

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements" and, if a forum selection clause is "both valid and applicable", a court need not "analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." <u>Leviton Mfg. Co. v. Reeve</u>, 942 F. Supp. 2d 244, 255 (E.D.N.Y. 2013) (citations omitted); <u>see also</u> <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 103 (2d Cir. 2006) (stating it is settled law that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements"). "The enforceability or validity of a forum selection clause is a matter of federal procedural law." <u>In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.</u>, 228 F. Supp. 2d 348, 372 (S.D.N.Y. 2002) (citing <u>Cronin v. Fam. Educ. Co.</u>, 105 F. Supp. 2d 136, 139 (E.D.N.Y. 2000)); <u>see also</u> <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 214 (2d Cir. 2014) (holding "where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause").

Forum selection clauses are "presumptively valid and will control 'absent a strong showing that it should be set

9

aside.'" Mercer v. Raildreams, Inc., 702 F. Supp. 2d 176, 180 (E.D.N.Y. 2010) (quoting In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation, 228 F.Supp.2d 348, 372 (S.D.N.Y.2002)) (further quotations omitted). Such presumption can be overcome:

> (1) if their incorporation into the agreement was the result of fraud or overreaching[;] (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum[;] (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

Id. (citation omitted); see also PIRS Cap., LLC v. Chen, 746 F. Supp. 3d 167, 178 (S.D.N.Y. 2024) (citing Martinez, 740 F.3d at 211).

Significantly, the Second Circuit, and several district courts within the Circuit, have made clear that a party cannot overcome the presumption of validity by merely asserting that the entirety of the subject contract is void ab initio. Rather, "[t]o challenge successfully a forum selection clause as void on the basis of illegality, the challenge must be directed against the forum selection clause itself, as opposed to the contract as a whole." Id. (citing, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Seneca Fam. of Agencies, 255 F. Supp. 3d 480, 488 (S.D.N.Y. 2017), and Brightman v. InMode Ltd., No. 1:22-CV-5861, 2023 WL 5209290, at *3 (S.D.N.Y. Aug. 14, 2023) ("It

10

is well-settled that '[f]raud in the inducement of [an] [a]greement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause"), aff'd, No. 23-CV-1221, 2024 WL 1598118 (2d Cir. Apr. 12, 2024)).  Thus, even if a contract is alleged to be void ab initio, such assertion is not "a valid basis for [a party] to escape the forum selection cause."  PIRS Cap., LLC v. Chen, 746 F. Supp. 3d 167, 178 (S.D.N.Y. 2024).

II. Analysis

Upon careful consideration of the parties' submissions and the relevant law, the Court finds the forum selection clause contained within the Finance Agreement, which permits this Court to exercise personal jurisdiction over Defendants, is presumptively "valid and applicable."  Leviton Mfg. Co., 942 F. Supp. 2d at 255.  Therefore, Defendant's Dismissal Motion seeking dismissal of this action for lack of personal jurisdiction is DENIED and the Court need not further "analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."  Id.; see also D.H. Blair & Co., 462 F.3d at 103.

A. The Forum Selection Clause is Presumptively Valid

The forum selection clause contained within the Finance Agreement is presumptively valid, and Defendants have not brought forth sufficient evidence to overcome such presumption.  The

11

parties spend ample time in their underlying submissions debating the applicable law. However, the law is clear, as Plaintiff correctly asserts, that "the enforceability of a forum selection clause in a federal court is governed by federal law." (Opp'n at 13); see also Martinez, 740 F.3d at 214 (holding "federal law governs the enforceability of the forum selection clause" and the chosen state substantive law governs "the interpretation of the forum selection clause"). Indeed, under federal law:

> To determine whether a forum selection clause is valid and enforceable, courts consider: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., ... whether the parties are required to bring any [ ] dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause."

NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 342-43 (S.D.N.Y. 2020) (quoting Martinez, 740 F.3d at 217). However, "[i]f the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable" and a party can only overcome this presumption by making "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. (emphasis added).

12

Here, it is clear the forum selection clause contained in the Finance Agreement is valid and enforceable. First, the language of the clause is clear and unambiguous, and Defendants make no claim otherwise. (See Support Memo, in toto; Reply, ECF No. 21, in toto.) Second, the clause is mandatory, as it explicitly states that Defendants "submit to the jurisdiction of NY and agree that the state and federal courts sitting in Nassau County, New York, shall have exclusive jurisdiction over any action or proceeding to enforce [The Finance Agreement]." (See Finance Agreement at 1) (emphasis added). And, third, this action is well within the scope of the forum selection clause which covers "any action or proceeding arising under" the Finance Agreement, since this is an action for breach of said Agreement. (Id.)

B. Defendants' Claim that the Finance Agreement is Void *Ab Initio* Is Insufficient to Overcome the Presumption of Validity

While Defendants attempt to overcome the presumptively valid forum selection clause contained in the Finance Agreement by alleging the entirety of the Finance Agreement is void ab initio, such arguments are routinely rejected by federal courts. See, e.g., PIRS Cap., LLC, 746 F. Supp. 3d at 178 ("[N]umerous [Courts in this Circuit] have similarly rejected attempts to avoid enforcement of forum selection clauses based on allegations that the underlying contract was unsurious") (citing Gafner v. Oasis

13

Legal Finance, LLC, No. 23-CV-0581, 2024 WL 1190741 (D.N.J. Mar. 19, 2024); Spread Your Wings, LLC v. AMZ Grp. LLC, No. 20-CV-3336, 2020 WL 5749085, at *4 (N.D. Cal. Sept. 25, 2020); Vayn v. Schaen, 16-CV-0461, 2016 WL 4211838, at *3 (D.N.J. Aug. 9, 2016)).  To overcome such presumption, Defendants must have claimed that their agreement to the forum selection clause itself was procured via fraud.  Id.  Defendants make no such allegation here.  (See Support Memo, in toto.)  Nor do Defendants seek to overcome the presumption of enforceability by asserting that litigating before this Court will "for all practical purposes" deprive them of their "day in court", deprive them of an appropriate "remedy" under the chosen law, or that "strong public policy" is contravened via the forum selection clause.  (Id.); see Mercer, 702 F. Supp. at 180.  Accordingly, Defendants have not overcome the presumption of validity of the forum selection clause contained within the Finance Agreement, and whereby they agreed to submit to the jurisdiction of this Court.  Therefore, Defendants Dismissal Motion is DENIED.

CONCLUSION

For the stated reasons, IT IS HEREBY ORDERED that Defendant's Dismissal Motion (ECF No. 18) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 18, 2025
       Central Islip, New York